IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
BILLINGS DIVISION

| | |
|---|---|
| KIMBERLY N. BRYANT,<br><br>               Plaintiff,<br><br>vs.<br><br>NANCY A. BERRYHILL, Acting<br>Commissioner of the Social Security<br>Administration,<br><br>              Defendant. | CV 17-56-BLG-TJC<br><br>**ORDER** |

Plaintiff Kimberly N. Bryant ("Plaintiff") has filed a complaint pursuant to 42 U.S.C. § 405(g) of the Social Security Act, requesting judicial review of the final administrative decision of the Commissioner of Social Security ("Commissioner") regarding the denial of her claim for disability insurance benefits ("DIB") under Title XVI of the Social Security Act ("the Act"), 42 U.S.C. §§ 401-433. (Doc. 1.) The Commissioner has filed the certified Administrative Record ("A.R."). (Doc. 4).

Presently before the Court is Plaintiff's motion for summary judgment, seeking reversal of the Commissioner's denial and remand for an award of

disability benefits, or alternatively a remand for a further hearing.  (Doc. 9.)  The motion is fully briefed and ripe for the Court's review.  (Docs. 14, 16.)

For the reasons set forth herein, and after careful consideration of the record and the applicable law, the Court finds Plaintiff's motion should be **GRANTED**, and the Commissioner's decision denying DIB should be **REVERSED**.

## I.   PROCEDURAL BACKGROUND

On June 21, 2013, Plaintiff filed an application for disability insurance benefits, which is the subject of this action.  (A.R. 195.)  Plaintiff alleged she has been unable to work since April 15, 2013.  (A.R. 195.)  The Social Security Administration denied Plaintiff's application initially on September 6, 2013, and upon reconsideration on February 26, 2014.  (A.R. 80-88; 89-96.)

On March 19, 2014, Plaintiff filed a written request for a hearing.  (A.R. 104-05.)  Administrative Law Judge Michele M. Kelley (the "ALJ") held a hearing on August 11, 2015.  (A.R. 27-79.)  On September 17, 2015, the ALJ issued a written decision finding Plaintiff not disabled.  (A.R. 11-22.)

Plaintiff requested review of the decision on November 11, 2015.  (A.R. 7.)  The ALJ's decision became final on March 10, 2017, when the Appeals Council

denied Plaintiff's request for review.  (A.R. 1-6.)  Thereafter, Plaintiff filed the instant action.

Plaintiff argues the ALJ committed reversible error by (1) improperly discrediting her testimony; (2) failing to give proper weight to her treating physician's opinion; (3) failing to properly weigh lay witness testimony; (4) failing to include depression as a severe impairment; and (5) failing to incorporate all of her impairments into the vocational consultant's hypothetical question.

## II.    LEGAL STANDARDS

### A.    Scope of Review

The Social Security Act allows unsuccessful claimants to seek judicial review of the Commissioner's final agency decision.  42 U.S.C. §§ 405(g), 1383(c)(3).  The scope of judicial review is limited.  The Court must affirm the Commissioner's decision unless it "is not supported by substantial evidence or it is based upon legal error." *Tidwell v. Apfel*, 161 F.3d 599, 601 (9th Cir. 1999).  *See also Bayliss v. Barnhart*, 427 F.3d 1211, 1214 n.1 (9th Cir. 2005) ("We may reverse the ALJ's decision to deny benefits only if it is based upon legal error or is not supported by substantial evidence."); *Flaten v. Sec'y of Health & Human Servs.*, 44 F.3d 1453, 1457 (9th Cir. 1995).

"Substantial evidence is more than a mere scintilla but less than a preponderance." *Tidwell*, 161 F.3d at 601 (citing *Jamerson v. Chater*, 112 F.3d 1064, 1066 (9th Cir. 1997)). "Substantial evidence is relevant evidence which, considering the record as a whole, a reasonable person might accept as adequate to support a conclusion." *Flaten*, 44 F.3d at 1457. In considering the record as a whole, the Court must weigh both the evidence that supports and detracts from the ALJ's conclusions. *Jones v. Heckler*, 760 F.2d 993, 995 (9th Cir. 1985); *Day v. Weinberger*, 522 F.2d 1154, 1156 (9th Cir. 1975)). The Court must uphold the denial of benefits if the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision. *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005); *Flaten*, 44 F.3d at 1457 ("If the evidence can reasonably support either affirming or reversing the Secretary's conclusion, the court may not substitute its judgment for that of the Secretary."). However, even if the Court finds that substantial evidence supports the ALJ's conclusions, the Court must set aside the decision if the ALJ failed to apply the proper legal standards in weighing the evidence and reaching a conclusion. *Benitez v. Califano*, 573 F.2d 653, 655 (9th Cir. 1978) (quoting *Flake v. Gardner*, 399 F.2d 532, 540 (9th Cir. 1968)).

**B.     Determination of Disability**

To qualify for disability benefits under the Social Security Act, a claimant must show two things: (1) she suffers from a medically determinable physical or mental impairment that can be expected to last for a continuous period of twelve months or more, or would result in death; and (2) the impairment renders the claimant incapable of performing the work she previously performed, or any other substantial gainful employment which exists in the national economy.  42 U.S.C. §§ 423(d)(1)(A), 423(d)(2)(A).  A claimant must meet both requirements to be classified as disabled.  *Id*.

The Commissioner makes the assessment of disability through a five-step sequential evaluation process.  If an applicant is found to be "disabled" or "not disabled" at any step, there is no need to proceed further.  *Ukolov v. Barnhart*, 420 F.3d 1002, 1003 (9th Cir. 2005) (quoting *Schneider v. Comm'r of the Soc. Sec. Admin*., 223 F.3d 968, 974 (9th Cir. 2000)).  The five steps are:

1.  Is claimant presently working in a substantially gainful activity?  If so, then the claimant is not disabled within the meaning of the Social Security Act.  If not, proceed to step two.  *See* 20 C.F.R. §§ 404.1520(b), 416.920(b).

2.  Is the claimant's impairment severe?  If so, proceed to step three.  If not, then the claimant is not disabled.  *See* 20 C.F.R. §§ 404.1520(c), 416.920(c).

3. Does the impairment "meet or equal" one of a list of specific impairments described in 20 C.F.R. Part 404, Subpart P, Appendix 1? If so, then the claimant is disabled. If not, proceed to step four. *See* 20 C.F.R. §§ 404.1520(d), 416.920(d).

4. Is the claimant able to do any work that he or she has done in the past? If so, then the claimant is not disabled. If not, proceed to step five. *See* 20 C.F.R. §§ 404.1520(e)-(f), 416.920(e)-(f).

5. Is the claimant able to do any other work? If so, then the claimant is not disabled. If not, then the claimant is disabled. *See* 20 C.F.R. §§ 404.1520(g), 416.920(g).

*Bustamante v. Massanari*, 262 F.3d 949, 954 (9th Cir. 2001).

Although the ALJ must assist the claimant in developing a record, the claimant bears the burden of proof during the first four steps, while the Commissioner bears the burden of proof at the fifth step. *Tackett v. Apfel*, 180 F.3d 1094, 1098, n.3 (citing 20 C.F.R. § 404.1512(d)). At step five, the Commissioner must "show that the claimant can perform some other work that exists in 'significant numbers' in the national economy, taking into consideration the claimant's residual functional capacity, age, education, and work experience." *Id*. at 1100 (quoting 20 C.F.R. § 404.1560(b)(3)).

/ / /

/ / /

## III. FACTUAL BACKGROUND

Plaintiff claims to suffer from severe impairments of obesity, ankylosing spondylitis, osteoarthritis in the knees, and depression. She asserts that these impairments render her incapable of performing work she previously performed, or any other substantial gainful employment.

### A. The Hearing

A hearing was held before the ALJ in Billings, Montana on August 11, 2015, and the following testimony was provided.

#### 1. Plaintiff's Testimony

Plaintiff testified that she previously worked two jobs, one full-time at Shopko and another part-time at Payless Shoes. (A.R. 35.) At Shopko, she was required to walk around the store during a full 40-hour work week. (*Id.*) She eventually quit her job at Shopko because the walking was too much for her arthritis. (*Id.*)

She continued working for Payless Shoes, but over time she was not able to maintain her schedule. (A.R. 36.) She went from working 4 to 5 days per week, to 2-3 days per week. (*Id.*) As her condition progressed, she often was not able to complete her shifts, and would go home early. (A.R. 36-37.) Her supervisor tried

to accommodate her, by allowing her to sit down periodically and permitting her to avoid certain job duties, such as picking up large boxes and putting away shoes. (A.R. 38.) Plaintiff's supervisor eventually told Plaintiff she thought it was in her best interest to quit, and expressed concern Plaintiff was hurting herself. (A.R. 39.) Ultimately, Plaintiff left Payless Shoes because it became too physically strenuous for her. (A.R. 37.) Plaintiff does not think she can do a more sedentary job because she also cannot sit for a long period of time. (A.R. 53.)

Plaintiff testified that on a typical day during the school year, she gets up at 7:00 a.m., makes sure her children get dressed and eat breakfast, and then drops them off at school. (A.R. 43.) Afterward, she returns home, and spends the balance of the day in bed, either laying down or sitting propped up on pillows. (*Id.*) Plaintiff stated that she is dependent on her mother "for everything." (A.R. 44.) Plaintiff explained that her mother gets home from work at 11:30 a.m., and takes care of her children, does the laundry, dishes, and most of the cooking. (A.R. 43-44.) Plaintiff states she can cook simple meals. (A.R. 46.) In the summer, Plaintiff's children are home with her in the morning, but she said they are old enough that they can get breakfast for themselves, and handle things on their own, until her mother gets home from work. (A.R. 45.) Plaintiff estimated that 90% of

her time is spent in bed, either laying down or sitting up. (A.R. 46-47.) Plaintiff stated she is able to go to the grocery store about once a month. (A.R. 48.)

With regard to her physical limitations, Plaintiff testified that shat she can only stand, sit, and walk for 15 minutes at a time. (A.R. 37-47.) She does not climb stairs because of her knees and hips. (A.R. 49.) She has difficulty sitting with her knees bent for very long, and therefore, eats her meals in bed and does not sit in her living room. (A.R. 49-50.) Plaintiff indicated that she sometimes misses appointments due to her pain, and her pain has affected her social life. (A.R. 50-51.) Plaintiff does not do much when she is in bed, except sit and think, which she thinks led to her depression. (A.R. 51.) Plaintiff also stated that her memory is bad because of all her medications. (A.R. 52.)

Plaintiff tried physical therapy, but discontinued it because her knees are "bone on bone," and doing the exercises caused more pain. (A.R. 42.) Plaintiff indicated she could not do water aerobics as recommended because she could not afford gas to drive to the YMCA. (A.R. 41.) She also indicated she did not have anyone to watch her son. (A.R. 41-42.) Plaintiff stated she needs knee replacement surgery on both knees, as well as bariatric surgery. (A.R. 39, 42.) However, Medicaid will not pay for the bariatric surgery. (A.R. 39-40.)

Plaintiff testified that she tried moving to Ohio to live with her father after she separated from her husband. (A.R. 54-55.) She stated it turned out to be a poor living situation, so she returned to Montana approximately 3 months later. (A.R. 40, 54-55.) While she was in Ohio, Plaintiff described difficulties obtaining her pain medication after her prescription expired. (A.R. 40-41.) Because there was a long wait to get an appointment at a pain clinic, she went to an emergency room, and was given a prescription for Tramadol. (A.R. 40.) The physician at the hospital reportedly advised her that the best way for her to get back on her pain regimen was to return to Montana. (*Id.*) Plaintiff indicated the prescription from that emergency room visit later raised the concern of a pharmacist at Billings Clinic regarding opioid misuse. (*Id.*)

### 2. Vocational Expert's Testimony

Delane Hall, a vocational expert, also testified before the ALJ. (A.R. 55-57; 68-78.) The ALJ asked Mr. Hall three hypothetical questions. First, the ALJ asked Mr. Hall to assume a person the same age as Plaintiff, and with the same work history and educational background, who could lift and carry and push 10 pounds frequently and 20 pounds occasionally, stand and walk 3 hours in an 8-hour work day, sit 6 hours in an 8-hour workday, occasionally climb ramps and

stairs, ladders, ropes and scaffolds, balance, stoop, kneel, crouch, and crawl, and who must avoid concentrated exposure to extreme cold, vibrations and hazards including wet, slippery or uneven surfaces, unprotected heights, and dangerous machinery. (A.R. 74.) Mr. Hall testified the hypothetical individual would be able to perform Plaintiff's past work as a receptionist and collections clerk, as well as unskilled jobs in the national economy such as call-out operator, document preparer, and office helper. (A.R. 74-75.)

Second, the ALJ asked Mr. Hall to assume the same person but with the limitation that the person need to change positions every 30 to 60 minutes for a few minutes at a time, while staying on task. (A.R. 75.) Mr. Hall stated the person could perform Plaintiff's past jobs as well as the document preparer and office helper positions. (*Id*.)

Third, the ALJ asked Mr. Hall to assume the same person, but with the requirement the person would be off task 20 percent of an 8-hour workday. (A.R. 76.) Mr. Hall stated the individual could not perform Plaintiff's past jobs, or any other jobs in the national economy. (*Id.*)

Plaintiff's counsel asked Mr. Hall to assume the same person from hypothetical number two, but who would need to change positions every 15

minutes.  (A.R. 77.)  Mr. Hall stated that would erode the occupational base by 60 to 65 percent.  (*Id.*)  Plaintiff's counsel then asked Mr. Hall to assume the person is only able to sit, stand and walk for a total of two hours each.  (*Id.*)  Mr. Hall stated there would be no jobs available.  (*Id.*)  Mr. Hall also testified that generally only one to two absences per month would be tolerated.  (A.R. 77-78.)

### B.    Medical Evidence

The administrative record includes Plaintiff's medical records from several health care providers.  The Court has briefly summarized only those records that are relevant to the specific issues presented for review.

### 1.    Treating Provider Evidence

#### a.    *Dr. Larry Severa, M.D.*

Plaintiff has been treated by Dr. Larry Severa since 2012.  (A.R. 520.)  In May 2012, Plaintiff reported to Dr. Severa that her pain was not adequately controlled.  (A.R. 339.)  Dr. Severa noted that Plaintiff has a history of ankylosing spondylitis and chronic pain.  (*Id.*)  Dr. Severa had Plaintiff complete a pain contract and prescribed daily OxyContin, with Oxycodone for breakthrough pain.  (A.R. 340.)  A month later, he noted that Plaintiff had several Oxycodone pills left.  (A.R. 330.)  Dr. Severa adjusted her medications, and prescribed daily long-acting

Oxycodone, with short-acting Oxycodone for break through pain. (A.R. 331.) At that time, Dr. Severa noted that Plaintiff was able to sit comfortably in the exam chair. (A.R. 340.)

On July 9, 2013, Plaintiff saw Dr. Severa to have HRDC paperwork filled out. (A.R. 270.) At that time, Plaintiff reported that she was no longer able to work due to her ankylosing spondylitis. (A.R. 270.)

On July 9, 2014, Plaintiff saw Dr. Severa's P.A., Cindy Murray. (A.R. 395.) Plaintiff was seeking a medication refill. (*Id.*) Plaintiff explained that she had recently moved to Ohio for three months, but it did not work out, so she was back in Montana. (*Id.*) Therefore, she was trying to re-establish care with Dr. Severa and get her pain medications refilled. (*Id.*) Plaintiff also indicated she was experiencing swelling in her lower extremities. (*Id.*) Dr. Severa did not have an appointment available, so Ms. Murray gave her a two-month supply of Oxycodone and OxyContin to get her through until she could see Dr. Severa. (A.R. 398.)

On August 15, 2014, Plaintiff saw Dr. Severa for an annual exam. (A.R. 413.) He noted that overall she was doing well, and upon physical examination, he noted she had normal strength and motor function. (*Id.*) Plaintiff indicated that she had lost her OxyContin prescription, and she wanted a refill. (*Id.*) Dr. Severa

told her that would not be possible.  (A.R. 413.)  He stated she needed to renew her pain contract and see the pain pharmacist.  (*Id.*)  Dr. Severa stated he would re-start her pain medication on three-month intervals following that appointment.  (A.R. 414.)

On September 8, 2014, Dr. Severa noted that Plaintiff had gone without pain medication for a month due to losing her prescription, and that she missed her appointment with the pain pharmacist because she was ill.  (A.R. 430.)  However, Dr. Severa indicated Plaintiff's chronic pain was doing well at that time.  (*Id.*)

In October 2014, Plaintiff saw Dr. Severa for depression.  (A.R. 435.)  He prescribed Cymbalta.  (A.R. 438.)  Dr. Severa noted Plaintiff's physical examination showed she had normal strength and sensation in her upper and lower extremities.  (*Id.*)  Two weeks later, Plaintiff reported that she was doing significantly better and felt the medication was working very well.  (A.R. 458.)

On March 25, 2015, Plaintiff reported that her pain was controlled.  (A.R. 503.)  At that time, Dr. Severa noted Plaintiff was taking OxyContin twice a day, and Oxycodone for breakthrough pain.  (*Id.*)  Dr. Severa also noted Plaintiff had occasional lower extremity swelling.  (*Id.*)  Plaintiff again reported her pain was controlled in June 2015.  (A.R. 516.)

On December 15, 2014, Dr. Severa completed an Arthritis Medical Source Statement. (A.R. 520-23.) Dr. Severa indicated Plaintiff's symptoms include chronic pain of the low back and fatigue. (A.R. 520.) In terms of functional limitations, Dr. Severa stated Plaintiff can only walk 1/2 block; can sit and stand nor more than 15 minutes at one time; can sit and stand less than 2 hours total in an 8-hour work day; that she would need to shift positions from sitting, standing and walking at will; she will need to walk every 15 minutes; and she would need to take unscheduled breaks every 15 minutes that would last 3-5 minutes each. (A.R. 521-22.) Dr. Severa opined Plaintiff can lift less than 10 pounds occasionally, and 10-20 pounds rarely. (A.R. 522.) He stated she can occasionally twist and stoop, and can only rarely crouch, climb stairs or climb ladders. (*Id.*) He also opined that Plaintiff has significant limitations with reaching, handling and fingering. (*Id.*) He stated she can only reach in front of her body 80% of the time and overhead 30%. (A.R. 523.) Dr. Severa estimated Plaintiff would miss more than four days of work per month due to her impairments. (A.R. 523.)

/ / /

/ / /

/ / /

b.      *Lee Stringer, R.Ph.*

Plaintiff missed two appointments with the pain pharmacist, Lee Stringer,

one in August 2014 and another in September 2014.  In both instances, Plaintiff

did not call to cancel or reschedule.  (A.R. 418, 434.)

On October 24, 2014, Plaintiff saw Mr. Stringer.  (A.R. 451.)  He stated

Plaintiff's opioid misuse measure was 14.  (A.R.  454.)  He noted Plaintiff had

aberrant drug-related behaviors, including a recent lost prescription, multiple no-

show appointments, and a recent filling of a controlled substance from an outside

provider without her primary care provider's knowledge.  (*Id.*)  He acknowledged

Plaintiff had a legitimate medical purpose for opioid therapy.  He recommended

discontinuing tramadol and oxycodone immediate release therapy.  (A.R. 455.)

c.      *Bruno Oliveira, M.D.*

Plaintiff saw Dr. Bruno Oliveira for treatment of ankylosing spondylitis.  Dr.

Oliveira noted that from February 2012 through February 2015, Plaintiff

consistently reported severe knee pain (A.R. 273, 304, 311, 333, 355, 375, 383,

445, 476), and he diagnosed her with bilateral knee osteoarthritis.  (A.R. 279.)  Dr.

Oliveira's treatment notes indicated Plaintiff had full range of motion in her

elbows and hips, her ankles were normal, and she had left knee crepitation.  (A.R.

16

278, 307, 314, 337, 358, 379, 387, 449, 479, 514.)  Dr. Oliveira also indicated

Plaintiff's ankylosing spondylitis appeared to be stable, and her knee pain was

mechanical in nature.  (A.R. 307, 337, 358, 379.)  He referred her to orthopedics,

but she was deemed not to be a candidate for knee replacement surgery due to her

young age.  (A.R. 273; 289-90.)

    2. <u>Non-Examining Physician Evidence</u>

     a. *William Fernandez, M.D.*

  Dr. William Fernandez, reviewed Plaintiff's medical records, but did not

examine her, and did not testify at the hearing.  He issued an opinion on September

5, 2013.  (A.R. 82-85.)  Dr. Fernandez noted that as of July 2013, Plaintiff's

symptoms from inflammatory arthritis were felt to be controlled and that most of

her pain was due to her knees.  (A.R. 82.)  He noted that Plaintiff is very

overweight.  (*Id.*)  He indicated her examinations showed full range of motion in

her upper extremities, her hips moved well, her ankles were normal, she had left

knee crepitus, and she walks slowly with antalgic gait on the left.  (*Id.*)

  Dr. Fernandez opined that Plaintiff could occasionally lift 20 pounds and

frequently lift 10 pounds.  (A.R. 83.)  He further opined she can stand/walk for 3

hours, and sit for 6 hours in an 8-hour workday.  (*Id.*)  Dr. Fernandez limited

Plaintiff to occasionally climbing ramps/stairs, ladders, balancing, stooping, kneeling, crouching, and crawling, and indicated she should avoid concentrated exposure to extreme cold, vibration, and hazards including wet or slippery surfaces, uneven ground, unprotected heights, and dangerous machinery. (A.R. 84-85.)

### b. *Ronald Hull, M.D.*

Dr. Ronald Hull also reviewed Plaintiff's medical records and issued an opinion on February 25, 2014. (A.R. 93.) Dr. Hull agreed with Dr. Fernandez's limitations upon reconsideration of the initial denial of Plaintiff's claim. (*Id.*)

## C.    Other Source Evidence

Plaintiff submitted letters from her former supervisor and former co-worker at Payless Shoes. (A.R. 257-260.)

### a. *Tina Heimbichner*

Ms. Heimbichner stated that she is a manager at Payless Shoes. (A.R. 258.) Ms. Heimbichner supervised Plaintiff from July 2008 until June 2013. (A.R. 258, 260.) Ms. Heimbichner explained that Plaintiff's job was very physical, and required Plaintiff to be on her feet for the entire shift. (A.R. 258.) She explained that Plaintiff initially worked 25-32 hours per week. (*Id.*) Over time, however,

Ms. Heimbichner noticed that Plaintiff's health was declining.  (A.R. 259.)  As a result, Plaintiff cut back her hours, and started leaving work before her shifts were over.  (A.R. 259.)  Ms. Heimbichner let Plaintiff sit on a bench behind the counter due to her pain.  (A.R. 259.)  She also stated that she observed Plaintiff cry from her pain.  (*Id.*)  Ms. Heimbichner stated she talked to Plaintiff about quitting, and opined that she thought Plaintiff worked longer than she should have.  (A.R. 260.)

       b.     *Elizabeth S. Moore*

Ms. Moore stated that she has worked at Payless Shoes since 2005.  (A.R. 257.)  She indicated that when she started working with Plaintiff in 2008, Plaintiff was able to do all of the tasks associated with the job and was reliable.  (*Id.*)  Ms. Moore stated that over the span of four years, she witnessed Plaintiff's health and stamina decline.  (*Id.*)  She indicated Plaintiff started having problems with vacuuming, handling shipments, and being on her feet.  (*Id.*)  Ms. Moore stated she often had to close the store by herself because Plaintiff went home early in pain, or would not come into work because she could not get out of bed.  (*Id.*)

/ / /

/ / /

**/ / /**

19

**D.     The ALJ's Findings**

The ALJ followed the five-step sequential evaluation process in considering

Plaintiff's claim.  First, the ALJ found that Plaintiff had not engaged in substantial

gainful activity since April 15, 2013.  (A.R. 13.)  Second, the ALJ found that

Plaintiff has the following severe impairments: "obesity, ankylosing spondylitis,

osteoarthritis in her knees."  (A.R. 13.)  Third, the ALJ found that Plaintiff does

not have an impairment or combination of impairments that meets or medically

equals any one of the impairments in the Listing of Impairments.  (A.R. 15-16.)

Fourth, the ALJ stated Plaintiff has the RFC to:

> perform a range of light work as defined in 20 CFR 404.1567(b) as
> follows: the claimant can lift, carry, push or pull ten pounds
> frequently and twenty pounds occasionally; can stand and/or walk for
> three hours and sit for six hours in an eight-hour workday.  The
> claimant can occasionally climb ramps, stairs, ladders, ropes or
> scaffolds, balance, stoop, kneel, crouch, and crawl.  Finally, the
> claimant must avoid concentrated exposure to vibrations, extreme
> cold, and hazards, including wet, slippery, or uneven surfaces,
> unprotected heights, and dangerous machinery.

(A.R. 16.)

The ALJ next found that Plaintiff is able to perform her past relevant work

as a receptionist and a collections clerk.  (A.R. 20.)  The ALJ alternatively found

Plaintiff could perform the requirements of representative occupations such as call

out operator, document preparer, and office helper.  (A.R. 21.)  Thus, the ALJ

found that Plaintiff was not disabled.  (A.R. 22.)

## IV.  DISCUSSION

Plaintiff argues that the ALJ erred in the following ways:  (1) improperly

discrediting her testimony; (2) not giving proper weight to the opinion of her

treating physician, Dr. Larry Severa, M.D.; (3) failing to properly weigh the

statements of Plaintiff's former supervisor and coworker; (4) failing to include

depression as a severe impairment; and (5) failing to incorporate all of her

impairments into the vocational consultant's hypothetical question.

### A.  The ALJ's Credibility Determination

Plaintiff argues the ALJ's credibility determination was erroneous because

the ALJ made only a general credibility finding without providing clear and

convincing reasons for rejecting her testimony.  Plaintiff also argues the ALJ's

adverse credibility finding was based in part on material misstatements of the facts

or incorrect assumptions.  The Commissioner counters that the ALJ properly

evaluated Plaintiff's credibility.

The credibility of a claimant's testimony is analyzed in two steps.  *Vasquez

v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009).  First, the ALJ must determine

whether the claimant has presented objective evidence of an impairment or impairments that could reasonably be expected to produce the pain or other symptoms alleged. *Id.* Second, if the claimant meets the first step, and there is no affirmative evidence of malingering, the ALJ may reject the claimant's testimony only if she provides "specific, clear and convincing reasons" for doing so. *Id.* "In order for the ALJ to find [the claimant's] testimony unreliable, the ALJ must make 'a credibility determination with findings sufficiently specific to permit the court to conclude that the ALJ did not arbitrarily discredit claimant's testimony.'" *Turner v. Commissioner of Soc. Sec. Admin.*, 613 F.3d 1217, 1224 n.3 (9th Cir. 2010). "General findings are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints." *Reddick v. Chater*, 157 F.3d 714, 722 (9th Cir. 1998) (quoting *Lester*, 81 F.3d at 834). *See also Brown-Hunter v. Colvin*, 806 F.3d 487, 494 (9th Cir. 2015). The clear and convincing standard "is not an easy requirement to meet: '[It] is the most demanding required in Social Security cases.'" *Garrison v. Colvin*, 759 F.3d 995, 1015 (9th Cir. 2014).

To assess a claimant's credibility, the ALJ may consider (1) ordinary credibility techniques, (2) unexplained or inadequately explained failure to seek or

follow treatment or to follow a prescribed course of treatment, and (3) the claimant's daily activities. *Smolen v. Chater*, 80 F.3d 1273, 1284 (9th Cir. 1996); *Fair v. Bowen*, 885 F.2d 597, 603-04 (9th Cir. 1989). An ALJ may also take the lack of objective medical evidence into consideration when assessing credibility. *Baston v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1196 (9th Cir. 2004). However, the ALJ may not reject the claimant's statements about the intensity and persistence of their pain or other symptoms "solely because the available objective medical evidence does not substantiate [the claimant's] statements." 20 C.F.R. § 404.1529(c)(2).

Here, the first step of the credibility analysis is not at issue. The ALJ determined that Plaintiff's medically determinable impairments could reasonably be expected to cause her symptoms, and there is no argument that Plaintiff is malingering. Therefore, the ALJ was required to cite specific, clear and convincing reasons for rejecting Plaintiff's subjective testimony about the severity of her symptoms. The Court finds the ALJ did so.

The ALJ found Plaintiff's testimony regarding the degree of her limitations was only partially credible in light of her daily activities, her ability to work part time after the alleged onset date, evidence of drug-seeking behavior, and evidence

of her effective response to treatment. (A.R. 17-18.) In reaching these conclusions, the ALJ properly identified specific aspects of Plaintiff's testimony she found not credible and cited specific evidence she believed contradicted that testimony. *Reddick*, 157 F.3d at 722; *Brown-Hunter*, 806 F.3d at 489.

The ALJ noted that Plaintiff testified that she has to change positions constantly, and can only sit, stand, or walk for 15-20 minutes at a time. (A.R. 17.) The ALJ found, however, that Plaintiff had the ability to get her children ready and drive them to school, prepare simple meals, and go grocery shopping. The ALJ also noted Plaintiff had travelled[1] to Ohio for three months. (*Id.*) The ALJ found Plaintiff's activities were not limited to the extent one would expect, given her complaints of disabling symptoms. (*Id.*) The ALJ also found Plaintiff's work activity indicated her daily activities were at times somewhat greater than she reported. (*Id.*) This is a permissible observation. *See e.g.* 20 C.F.R. § 404.1571 ("Even if the work [the claimant has] done was not substantial gainful activity, it

---

[1] Plaintiff takes issue with the ALJ's use of the term "travelled." She argues she did not engage in recreational travel, but rather moved to Ohio for three months. (Doc. 9 at 18.) The ALJ did not, however, say the travel was for recreational purposes. Rather the ALJ wrote Plaintiff "travelled to Ohio for three months and returned in the summer of 2014." (A.R. 14.) The Court finds the ALJ's description of Plaintiff's activity accurately summarizes that Plaintiff went to Ohio, and returned three months later.

may show that [the claimant is] able to do more work than [she] actually did."); *Kinney v. Colvin*, 2015 WL 6704673, *3 (D. Mont. Nov. 2, 2015) (finding the ALJ could consider the plaintiff's continued part-time work activity where it contradicted his testimony regarding the severity of his impairment).

The ALJ further cited treatment notes from October 2014 that indicated Plaintiff had an elevated opioid misuse measure. (A.R. 17.) The ALJ found this reflected poorly on her credibility. (*Id.*) Plaintiff takes issue with the ALJ's consideration of this evidence, arguing the ALJ impermissibly "cherry-picked" one record out of 250 pages and ignores the context involved. Plaintiff is correct that there is only one treatment note expressly mentioning opioid misuse. (A.R. 451-55.) But the observations in the treatment note, that Plaintiff demonstrated aberrant drug-related behaviors, are corroborated by other notes in the medical record. For example, Dr. Severa noted Plaintiff lost a prescription, and there are notes showing Plaintiff missed appointments with her pain pharmacist. (A.R. 413, 430, 418, 434.) Therefore, the Court does not find the ALJ impermissibly singled out and relied on the October 2014 treatment note. Further, Plaintiff testified about the circumstances of her temporary move to Ohio, which she contends explains the alleged aberrant drug-related behavior. (A.R. 40-41, 50, 54-55.) Therefore, the

ALJ was able to consider Plaintiff's explanations in evaluating the October 2014 treatment note. As such, the Court does not find err in the ALJ's assessment of Plaintiff's credibility on this point.

Finally, the ALJ noted the medical records showed that Plaintiff's ankylosing spondylosis was generally controlled; Plaintiff was doing well; treatment notes showed she had normal strength, sensation, motor function, range of motion; and notes from 2014 and 2015 indicated her pain was well controlled. (A.R. 18.)

The ALJ's observations are generally supported in the record.[2] Although this Court may not evaluate the evidence in the same way as the ALJ, the Court may not substitute its own interpretation of the evidence for the ALJ's interpretation. *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002).

---

[2] The Court finds the ALJ's suggestion that Plaintiff was not credible regarding her knee condition because she "was not a candidate for a total knee arthroplasty," somewhat misconstrues the record. (A.R. 18.) The medical records consistently indicated Plaintiff suffers from knee pain, and the reason she was not a candidate for surgery was due to her young age, not because her knees were not severe enough. (A.R. 273, 289-90.) The Court does not find this error requires reversal, however. Even if one or more reasons listed by the ALJ are invalid, the ALJ's credibility determination will be upheld so long as the ALJ provides some valid reasons. *Bray v. Comm'r*, 554 F.3d 1219, 1227 (9th Cir. 2009); *Carmickle v. Comm'r*, 533 F.3d 1155, 1162-63 (9th Cir. 2008). As discussed, the ALJ provided other valid reasons for discounting Plaintiff's credibility.

Accordingly, the Court finds the ALJ properly considered Plaintiff's testimony, and provided sufficiently specific, clear and convincing reasons for her conclusion with respect to Plaintiff's credibility.

## B.     The ALJ's Evaluation of the Treating Physician's Opinion

Plaintiff contends that the ALJ improperly discounted Dr. Severa's opinion. She argues the ALJ rejected the entire opinion, when at best, only a portion of his opinion (relating to upper extremity limitations) lacked sufficient support.  Plaintiff argues the ALJ did not provide any reasons for disregarding the rest of the opinion. In response, the Commissioner argues the ALJ gave sufficient reasons for discounting Dr. Severa's opinion.

### 1.     Legal Standard

In assessing a disability claim, an ALJ may rely on "opinions of three types of physicians: (1) those who treat the claimant (treating physicians); (2) those who examine but do not treat the claimant (examining physicians); and (3) those who neither examine nor treat the claimant (nonexamining physicians)." *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995.)  The Commissioner applies a hierarchy of deference to these three types of opinions.  The opinion of a treating doctor is generally entitled to the greatest weight.  *Id.*  ("As a general rule, more weight

should be given to the opinion of a treating source than to the opinion of doctors who do not treat the claimant."); *see also* 20 C.F.R. § 404.1527(c)(2). "The opinion of an examining physician is, in turn, entitled to greater weight than the opinion of a nonexamining physician." *Lester*, 81 F.3d at 830.

"The opinion of a treating physician is given deference because 'he is employed to cure and has a greater opportunity to know and observe the patient as an individual.'" *Morgan v. Comm'r of the Soc. Sec. Admin.*, 169 F.3d 595, 600 (9th Cir. 1999) (quoting *Sprague v. Bowen*, 812 F.2d 1226, 1230 (9th Cir. 1987)). "However, the opinion of the treating physician is not necessarily conclusive as to either the physical condition or the ultimate issue of disability." *Id.  See also Tonapetyan v. Halter*, 242 F.3d 1144, 1148 (9th Cir. 2001) ("Although a treating physician's opinion is generally afforded the greatest weight in disability cases, it is not binding on an ALJ with respect to the existence of an impairment or the ultimate determination of disability.").

If the treating physician's opinion is not well-supported by medically acceptable clinical and laboratory diagnostic techniques, or is inconsistent with other substantial evidence in the record, it is not entitled to controlling weight. *Orn v. Astrue*, 495 F.3d 625, 631-32 (9th Cir. 2007) (quoting Social Security

Ruling 96-2p).  In that event, the ALJ must consider the factors listed in 20 C.F.R.

§ 404.1527(c) to determine what weight to accord the opinion.  *See* Social Security

Ruling 96-2p (stating that a finding that a treating physician's opinion is not well

supported or inconsistent with other substantial evidence in the record "means only

that the opinion is not entitled to 'controlling weight,' not that the opinion should

be rejected.  Treating source medical opinions are still entitled to deference and

must be weighed using all of the factors provided in 20 C.F.R. § 404.1527.").  The

factors include: (1) the length of the treatment relationship and the frequency of

examination; (2) the nature and extent of the treatment relationship; (3)

supportability of the opinion; (4) consistency of the opinion with the record as a

whole; (5) the specialization of the treating source; and (6) any other factors

brought to the ALJ's attention that tend to support or contradict the opinion.  20

C.F.R. § 404.1527(c)(2)(I)-(ii), (c)(3)-(6); *Trevizo v. Berryhill*, 871 F.3d 664, 675

(9th Cir. 2017).

Opinions of treating physicians may only be rejected under certain

circumstances.  *Lester,* 81 F.3d at 830.  To discount an uncontradicted opinion of a

treating physician, the ALJ must provide "clear and convincing reasons."  *Id.*  To

discount the controverted opinion of a treating physician, the ALJ must provide

"'specific and legitimate reasons' supported by substantial evidence in the record." *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012)*; Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1998). The ALJ can accomplish this by setting forth "a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989). "The ALJ must do more than offer his conclusions. He must set forth his own interpretations and explain why they, rather than the doctors' are correct." *Reddick*, 157 F.3d at 725. "The opinion of a nonexamining physician cannot by itself constitute substantial evidence that justifies the rejection of the opinion of either an examining physician *or* a treating physician." *Lester*, 81 F.3d at 831. However, "the findings of a nontreating, nonexamining physician can amount to substantial evidence, so long as other evidence in the record supports those findings." *Saelee v. Chater*, 94 F.3d 520, 522 (9th Cir. 1996).

In her decision, the ALJ gave Dr. Severa's opinion "no significant weight." (A.R. 19.) The ALJ determined his opinion was not entitled to controlling weight because it was inconsistent with the medical records that showed Plaintiff "had normal upper and lower extremity strength and was usually in no acute distress." (*Id.*) Contrary to Dr. Severa's opinion, the ALJ further found there was no

evidence Plaintiff had any upper extremity symptoms that interfered with her ability to reach in front or overhead. (*Id.*)

An ALJ may find a treating physician's opinion it is not entitled to controlling weight on the basis that a conflict exists between the treating physician's opinion and the physician's notes. *Ghanim v. Colvin*, 763 F.3d 1154, 1161 (9th Cir. 2014). Here, the ALJ explained that Dr. Severa's opinion was inconsistent with the medical records that showed Plaintiff had normal upper and lower extremity strength, was usually in no acute distress, and had no upper extremity symptoms. These observations are supported in the record. (A.R. 272, 307, 314, 319, 337, 340, 343, 345, 358, 379, 387, 393, 397, 401, 405, 416, 438, 449, 479, 506, 514.)

Plaintiff asserts that even if Dr. Severa's reaching limitations are not supported, the ALJ nevertheless erred by rejecting Dr. Severa's entire opinion. Plaintiff points out that the Ninth Circuit has stated "an ALJ errs when he discounts an other source's *entire* testimony because of inconsistency with evidence in the record, when the ALJ has divided the testimony into distinct parts and determined that only one part of the testimony is inconsistent." *Dale v. Colvin*, 823 F.3d 941, 954 (9th Cir. 2016) (emphasis in original).

Here, the ALJ did not divide Dr. Severa's opinion into distinct parts. The Ninth Circuit explicitly limited its holding to situations where the ALJ's own decision recognized such a division. *Dale*, 823 at 945 n.3 ("We need not decide whether an ALJ who has *not* divided an other source's testimony into distinct parts may discount that witness' entire opinion when only some of the opinion is inconsistent with evidence in the record.") (emphasis in original). *See also Bennett v. Colvin*, 202 F.Supp.3d 1119, 1135 n.1 (N.D. Cal. 2016) (noting the Ninth Circuit's limitation of *Dale*). Thus, the *Dale* principle is inapplicable here. Further, the AJL found Dr. Severa's opinion was inconsistent with the objective findings relating to *both* Plaintiff's upper *and lower* extremity strength, and that Plaintiff was usually in no acute distress. Therefore, the conflict the ALJ cited was not limited solely to Dr. Severa's opinion on upper extremity limitations.

As noted above, however, even if the opinion is not given controlling weight, "[t]he ALJ is required to consider the factors set out in 20 C.F.R. § 404.1527(c)(2-6) in determining how much weight to afford the treating physician's medical opinion." *Ghanim*, 763 F.3d at 1161. The failure to consider these factors "constitutes reversible legal error." *Trevizo*, 871 F.3d at 676. Here,

the ALJ did not address these factors in determining the weight to be afforded to Dr. Severa's testimony.

Accordingly, the Court finds the ALJ erred with respect to Dr. Severa's opinion.

### C.     Consideration of Lay Witness Testimony

Plaintiff next argues the ALJ failed to cite specific and germane reasons to discount the testimony of her former supervisor and co-worker. The Commissioner argues the ALJ reasonably discounted the lay testimony.

"Lay testimony as to a claimant's symptoms is competent evidence which the [ALJ] must take into account, unless he expressly determines to disregard such testimony, in which case 'he must give reasons that are germane to each witness.'" *Nguyen v. Chater*, 100 F.3d 1462, 1467 (9th Cir. 1996) (quoting *Dodrill v. Shalala*, 12 F.3d 915, 919 (9th Cir. 1993)). Competent lay witness testimony "*cannot* be disregarded without comment." *Id.* (emphasis in original).

Plaintiff's former supervisor, Ms. Heimbichner, and co-worker, Ms. Moore submitted letters describing their observations about Plaintiff's symptoms of pain and how it affected her ability to work at Payless Shoes. (A.R. 257-60.) The ALJ rejected their testimony because "these individuals are not acceptable medical

sources," and their opinions did "not give any function-by-function work restrictions." (A.R. 19.) The ALJ's reasoning is erroneous.

The regulations require the ALJ to consider observations by non-medical sources. 20 C.F.R. § 404.1513(a)(4). Thus, the fact Ms. Heimbichner and Ms. Moore are not acceptable medical sources is simply not a valid reason to reject their testimony. The Ninth Circuit has recognized that although medical diagnosis are beyond the competence of lay witnesses, "lay witness testimony as to a claimant's symptoms or how an impairment affects ability to work *is* competent evidence, and therefore *cannot* be disregarded without comment." *Nguyen v. Chater*, 100 F.3d 1462, 1467 (9th Cir. 1996) (emphasis in original) (internal citations omitted). *See also Dodrill v. Shalala*, 12 F.3d 915, 918-19 (9th Cir. 1993) ("[F]riends and family members in a position to observe a claimant's symptoms and daily activities are competent to testify as to her condition.").

Here, Ms. Heimbichner and Ms. Moore provided their personal observations about relevant issues such as Plaintiff's pain symptoms, her ability to stand and walk at work, and her ability to maintain a consistent schedule. Their testimony is probative because they are eye witnesses who observed Plaintiff on a frequent basis over a period of several years. Therefore, the ALJ was required to either take

their testimony into account, or provide legitimate "reasons that are germane to each witness," for discounting their testimony. *Dodrill*, 12 F.3d at 919. The ALJ failed to do either. Nevertheless, the Court finds the error was harmless under the particular circumstances of this case.

An ALJ's error is harmless if it is "inconsequential to the ultimate nondisability determination." *Carmickle v. Comm'r Soc. Sec. Admin.*, 533 F.3d 1155, 1162 (9th Cir. 2008). The Ninth Circuit has explained that "where the ALJ's error lies in the failure to properly discuss competent lay testimony favorable to the claimant, a reviewing court cannot consider the error harmless unless it can confidently conclude that no reasonable ALJ, when fully crediting the testimony, could have reached a different disability determination." *Stout v. Comm'r Soc. Sec. Admin.*, 454 F.3d 1050, 1056 (9th Cir. 2006). Nevertheless, where the ALJ rejects a lay witness's testimony without providing germane reasons, but has given adequate reasons for rejecting similar testimony by the claimant or another witness, the ALJ's failure to discuss the lay witness testimony is harmless. *Molina*, 674 F.3d at 1116, 1121-22. *See also Valentine v. Comm'r of Soc. Sec. Admin.*, 574 F.3d 685, 694 (9th Cir. 2009).

Here, the testimony of Ms. Heimbichner and Ms. Moore was substantially similar to Plaintiff's testimony. Plaintiff testified that as her physical condition declined, she was not able to maintain her work schedule at Payless Shoes. (A.R. 36.) She stated she cut back the number of days per week she worked, and she often was unable to complete her shifts. (*Id.*) She said her supervisor allowed her to sit down periodically and she avoided certain job duties. (A.R. 38.) Plaintiff stated she eventually quit working at Payless Shoes because it was too strenuous. (A.R. 37.)

Similarly, Ms. Heimbichner and Ms. Moore stated in their letters that over time they observed Plaintiff's health and stamina decline. (A.R. 259, 257.) They both stated Plaintiff cut back her hours and would leave work early because she was in pain. (*Id.*) Ms. Heimbichner and Ms. Moore also reported Plaintiff had difficulty being on her feet, and Ms. Heimbichner stated she allowed Plaintiff to sit down during her shifts. (*Id.*) Ms. Moore stated Plaintiff became unable to perform all the tasks associated with the job, such as vacuuming and handling shipments. (*Id.*) Ms. Heimbichner indicated she talked to Plaintiff about quitting, and opined Plaintiff should have quit working sooner than she did. (A.R. 260.)

The Court has already concluded that the ALJ provided specific, clear, and convincing reasons for rejecting Plaintiff's testimony. As such, the Court finds the ALJ's findings with respect to Plaintiff's testimony provides a sufficient basis for the ALJ's rejection of Ms. Heimbichner and Ms. Moore's testimony. *See e.g Valentine*, 574 F.3d at 694 (stating an ALJ may rely on the same reasons he gave for discounting the claimant's credibility when the lay witness has given similar testimony).

Accordingly, the Court finds the ALJ's error with regard to the lay witness testimony is harmless, and does not warrant reversal.

### D.     Consideration of Depression

Plaintiff argues the ALJ failed to include depression as a severe impairment. Under step two of the sequential evaluation process, the ALJ must determine whether the claimant suffers from a severe impairment or combination of impairments. 20 C.F.R 404.1520(c); 416.920. At the step two inquiry, "the ALJ must consider the combined effect of all of the claimant's impairments on her ability to function, without regard to whether each alone was sufficiently severe." *Smolen v. Chater*, 80 F.3d 1273, 1290 (9th Cir. 1996)). The Social Security Act defines a "severe" impairment as one "which significantly limits [a

claimant's] physical or mental ability to do basic work activities." 20 C.F.R. § 404.1520(c). "An impairment or combination of impairments may be found 'not severe *only* if the evidence establishes a slight abnormality that has no more than a minimal effect on an individual's ability to work.'" *Webb v. Barnhart*, 433 F.3d 683, 686 (9th Cir. 2005) (quoting *Smolen*, 80 F.3d at 1290). The step two "inquiry is a de minimis screening device [used] to dispose of groundless claims," *Smolen*, 80 F.3d at 1290.

Here, the ALJ conducted a fairly thorough analysis at step two regarding the severity of Plaintiff's medically determinable mental impairments. (A.R. 14-15.) The ALJ discussed each of the four broad functional areas for evaluating mental disorders, known as the "paragraph B" criteria. (A.R. 14) The ALJ concluded that Plaintiff suffered from no limitations in each of the functional areas. (*Id.*) The ALJ's observations are consistent with the evidence in the record. (*See* A.R. 458, 460, 473, 517.) Accordingly, the ALJ's finding of non-severity was supported by substantial evidence.

Typically, a finding of non-severity at step two does not relieve the ALJ from further considering an impairment. At step four of the sequential evaluation process, the AJL must determine the claimant's RFC. 20 C.F.R. §

38

404.1545(a)(5)(i).   The RFC represents the most the claimant can do in a work setting despite the claimant's physical and mental limitations.  20 C.F.R. § 404.1545(a)(1).  In assessing the RFC, the ALJ must consider the "limitations and restrictions imposed by all of an individual's impairments, even those that are not 'severe.'  While a 'not severe' impairment(s) standing alone may not significantly limit an individual's ability to do basic work activities, it may – when considered with limitations or restrictions due to other impairments – be critical to the outcome of a claim."  SSR 96-8P, 1996 WL 374184, * 5 (S.S.A. July 2, 1996). *See also* 20 C.F.R. § 404.1545(e).

Here, however, the ALJ found Plaintiff had no limitations as a result of her depression.  (A.R. 14.)  Accordingly, there were no limiting effects of her depression for the ALJ to consider together with her other severe impairments.

Therefore, the Court finds the ALJ did not error with regard to Plaintiff's depression.

### E.     Vocational Expert

If a claimant shows she cannot return to previous work, the burden of proof shifts to the Secretary at step five to show that the claimant can do other kinds of work.  *Embrey v. Bowen*, 849 F.2d 418, 422 (9th Cir. 1988).   The Secretary may

use a vocational expert to meet that burden. *Id.* Hypothetical questions posed to the vocational expert must set out all the limitations and restrictions of the particular claimant. *Id.* "The testimony of a vocational expert 'is valuable only to the extent that it is supported by medical evidence.'" *Magallanes*, 881 F.2d 747, 756 (9th Cir. 189) (quoting *Sample*, 694 F.2d 639, 644 (9th Cir. 1982)). If the assumptions in the hypothetical are not supported by the record, then the vocational expert's opinion that the claimant has a residual working capacity has no evidentiary value. *Embrey*, 849 F.2d at 422.

Plaintiff first argues the ALJ erred in relying on the vocational testimony because it was inaudible at the hearing. An incomplete or inaudible transcript can be grounds to remand a case under Sentence Four of 42 U.S.C. § 405(g). *See Bianchi v. Sec'y of Health and Human Servs*, 764 F.2d 44, 46-47 (1st Cir. 1985). Here, there are five instances where the word "inaudible" appears in the transcript. (A.R. 68, 69, 77, 78.) Upon closer review of the transcript, however, it appears these notations involve either insignificant portions of the vocational expert's testimony, or "do not interfere with comprehension of the testimony to an extent that would hinder fair review." *Varney v. Sec'y of Health & Human Servs.*, 846 F.2d 581, 583 (9th Cir. 1990) (overruled by statute on other grounds) (*citing Ward*

*v. Heckler*, 786 F.2d 844, 848 (8th Cir. 1986)). Accordingly, the Court does not find the state of the transcript compromised Plaintiff's substantive rights or justifies reversal.

Plaintiff also argues that the hypothetical the ALJ relied on to find there are jobs she can perform was deficient because it did not incorporate the opinions of Plaintiff's treating physician. As discussed above, the Court has determined the ALJ failed to consider all of the relevant factors in determining how much weight to afford the treating physician's opinion. Accordingly, this error may have infected the hypothetical the ALJ relied on, and in turn, the ALJ's determination that Plaintiff could perform her past relevant work.

Therefore, the Court finds the ALJ's determination at step five is not supported by substantial evidence.

## V.     REMAND OR REVERSAL

 "[T]he decision whether to remand a case for additional evidence or simply to award benefits is within the discretion of the court." *Reddick v. Chater*, 157 F.3d at 728. If the ALJ's decision "is not supported by the record, 'the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation.'" *Hill v. Astrue*, 698 F.3d 1153, 1162 (9th Cir. 2012)

(quoting *Benecke v. Barnhart*, 379 F.3d 587, 595 (9th Cir. 2004)). "If additional proceedings can remedy defects in the original administrative proceedings, a social security case should be remanded. Where, however, a rehearing would simply delay receipt of benefits, reversal [and an award of benefits] is appropriate." *Lewin v. Schweiker*, 654 F.2d 631, 635 (9th Cir. 1981).

The Court finds remand for further proceedings is appropriate. On remand, the ALJ shall properly re-evaluate the opinion of Dr. Severa and obtain additional vocational expert testimony if necessary.

## VI. CONCLUSION

Based on the foregoing, **IT IS ORDERED** that the Commissioner's decision be **REVERSED** and this matter be **REMANDED** pursuant to sentence four of 42 U.S.C. § 405(g) for further proceedings consistent with this opinion.

**IT IS ORDERED**.

DATED this 13th day of September, 2018.

_____
TIMOTHY J. CAVAN
United States Magistrate Judge

42